UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

**Royal Indemnity Company and Royal Insurance
Company of America,**

**Plaintiffs,**

**–v–**                                              **5:03-CV-999**

**Pankajbhai S. Patel, Pritiben P. Patel, Individually and
as the Natural Parent and Guardian of P.P., and P.P.,**

**Defendants.**

◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆◆

APPEARANCES:

Bond, Schoeneck & King, P.L.L.C.
H. J. Hubert, Esq., of Counsel
Suzanne O. Galbato, Esq., of Counsel
One Lincoln Center
Syracuse, New York 13202-1355
Attorneys for Plaintiffs

Smith, Sovik, Kendrick & Sugnet, P.C.
Steven W. Williams, Esq., of Counsel
Gabrielle M. Hope, Esq., of Counsel
250 South Clinton Street
Suite 600
Syracuse, New York 13202-1252
Attorneys for Defendants

**Hon. Norman A. Mordue, D.J.:**

**MEMORANDUM-DECISION AND ORDER**

**INTRODUCTION**

In this action, plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 determining

their obligations under a homeowners insurance policy and an umbrella policy issued to

Pankajbhai S. Patel and his wife Pritiben P. Patel (jointly referred to as "Patels").  Presently

before the Court are two motions.  Plaintiffs move for summary judgment declaring that they have no obligation under the policies to indemnify defendants in connection with two subrogation lawsuits against defendants Pritiben Patel ("Pritiben") and P.P., the Patels' minor son.  Defendants move for summary judgment declaring that they are covered under the two policies.  For the reasons set forth herein, the Court grants plaintiffs' motion, denies defendants' motion and declares that plaintiffs have no obligation under the homeowners or umbrella policies to indemnify defendants in connection with the subrogation actions against them.

## BACKGROUND

Pursuant to a franchise agreement, defendant Pankajbhai Patel ("Pankajbhai") operated and managed a motel, the Knights Inn ("motel"), at 163 South First Street in Fulton, New York. The owner of the property was Nepa, LLC ("Nepa"), a domestic corporation of which Pankajbhai is the sole member and 100 % owner.  The Patels and their two minor sons lived in the manager's apartment located within the premises owned by Nepa at 163 South First Street.

Nepa had obtained commercial property and liability insurance for the 163 South First Street premises from St. Paul Insurance Company ("St. Paul") and Vermont Mutual Insurance Company ("Vermont Mutual").  On September 15, 2000, a fire occurred, damaging the motel. As a result of the property damage caused by the fire, St. Paul and Vermont Mutual paid to Nepa, as their insured, a total of $1,857,346.  Thereafter, St. Paul and Vermont Mutual each commenced separate subrogation lawsuits against P.P., one of the Patels' minor sons, and Pritiben, individually and as parent and guardian of P.P. [1]  In these actions, St. Paul and Vermont

---

[1]

The subrogation lawsuits were styled, *St. Paul Insurance Company, as subrogee of Nepa, LLC, d/b/a Knights Inn v. (P. P.), a minor, and Prittiben Patel, individually and as the natural parent and guardian of (P.P.) and John Doe, a fictitious person, jointly, severally and in the*

Mutual sought to recover sums paid to Nepa for the fire loss at the motel, on the ground that the fire resulted from the negligence of P.P. in using matches and flammable objects in performing a Hindu prayer ritual, and the negligence of Pritiben in permitting him to do so without supervision.

By letter dated May 9, 2002, Pritiben and P.P. tendered the St. Paul and Vermont Mutual subrogation lawsuits to plaintiffs and requested that plaintiffs enter a defense and confirm coverage pursuant to two insurance contracts issued by plaintiffs to the Patels for the period December 15, 1999, through December 15, 2000.  The first policy is a homeowners policy (also referred to as a tenants policy) issued by plaintiff Royal Indemnity Company to Patels as tenants of the manager's apartment, with a policy limit of $100,000, bearing policy number RKG 41 82 CV.  The second is an umbrella policy (also referred to as a V.I.P. policy), number PL V 41 83 CV, issued to Patels by plaintiff Royal Insurance Company of America; this policy operates as an excess policy to the homeowners insurance contract.  Plaintiffs agreed to defend Pritiben and P.P. in connection with the subrogation lawsuits subject to a reservation of rights letter dated July 1, 2003.

On August 13, 2003, while the subrogation actions were pending, plaintiffs filed the instant declaratory judgment action seeking a declaration that they have no duty of defense or indemnification in connection with the St. Paul and Vermont Mutual subrogation lawsuits. Thereafter, on April 13, 2004, St. Paul and Vermont Mutual agreed to compromise their claims

---

*alternative*, Docket No. BER- 3594-02 (Superior Court, Bergen Co., N.J.), and *Vermont Mutual Insurance Company, as subrogee of Nepa, LLC, d/b/a Knights Inn v. (P. P.) and Prittiben Patel, individually and as the Natural Parent and Guardian of (P. P.)*, Index No. 02-881 (Supreme Court, Oswego Co., N.Y.).

against Pritiben and P.P.  Under this stipulation, entered on the record before Hon. James W. McCarthy in New York Supreme Court, Onondaga County, St. Paul and Vermont Mutual released all claims against Pankajbhai, Pritiben and P.P. with prejudice.  They agreed that, if plaintiffs prevailed in this declaratory judgment action, St. Paul and Vermont Mutual would receive no recovery of any amounts paid to Nepa for the fire loss.  If, however, plaintiffs were not successful in the declaratory judgment action, St. Paul and Vermont Mutual would each recover $425,000 from plaintiffs for a total sum of $850,000.

One of the grounds upon which plaintiffs base their present motion is that, in the application for the homeowners (tenants) and umbrella policies for 163 South First Street, the Patels checked "No" in response to the question, "Any business conducted on premises?"  It is undisputed that in fact the Knights Inn motel business was conducted at the 163 South First Street property.  Plaintiffs submit evidence that if they had known that the motel business was conducted on the premises, they would not have issued the homeowners or umbrella policies that were issued.  Therefore, plaintiffs contend, the policies are void *ab initio* and plaintiffs have no duty of indemnification for the amounts sought in the subrogation actions.

**APPLICABLE LAW**

A party moving for summary judgment bears the initial burden of demonstrating that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the Court, viewing the evidence in the light most favorable to the nonmovant and drawing all reasonable inferences in the nonmovant's favor, determines that the movant has satisfied this burden, the burden then shifts to the nonmovant to adduce evidence establishing the existence of a disputed

-4-

issue of material fact requiring a trial. *See Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). If the nonmovant fails to carry this burden, summary judgment is appropriate. *See Celotex,* 477 U.S. at 323.

It is undisputed that New York law applies in this diversity case. Under New York statutory and case law, an insurer may avoid an insurance contract if the insured made a false statement of fact as an inducement to making the contract, and the misrepresentation was material. *See* N.Y. Insurance Law § 3105(a), (b) [2]; *Mutual Benefit Life Ins. Co. v. JMR Electronics Corp.*, 848 F.2d 30, 32 (2d Cir. 1988); *Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 762 N.Y.S.2d 148, 151 (3d Dep't 2003). The determination of materiality depends "not [on] whether the company might have issued the policy even if the information had been furnished; the question in each case is whether the company has been induced to accept an application which it might otherwise have refused." *Mutual Benefit*, 848 F.2d at 32 (citations omitted).

While in some cases materiality may be a factual issue, "where the evidence concerning materiality is clear and substantially uncontradicted, the matter is one of law for the court to

---

[2]

Section 3105(a) and (b) of New York State Insurance Law provides:

(a) A representation is a statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof. A misrepresentation is a false representation, and the facts misrepresented are those facts which make the representation false.

(b) No misrepresentation shall avoid any contract of insurance or defeat recovery thereunder unless such misrepresentation was material. No misrepresentation shall be deemed material unless knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such contract.

determine." *Id.* (citations omitted).  To establish materiality as a matter of law, the insurer must

present documentation concerning its underwriting practices, such as underwriting manuals,

bulletins, or rules pertaining to similar risks, which show that it would not have issued the same

policy if the correct information had been disclosed in the application.  *See Curanovic*, 762

N.Y.S.2d at 151.

## DISCUSSION

Both plaintiffs and defendants urge that summary judgment is appropriate.  No party

asserts a need for further discovery.  Accordingly, the Court reviews the record to ascertain

whether either party is entitled to judgment as a matter of law.

In support of their motion for summary judgment on the ground that the homeowners and

umbrella policies are void *ab initio* due to a material misrepresentation, plaintiffs rely on the

affidavit of Mark Bowsher, who has been employed by Royal & SunAlliance, which includes

plaintiffs, since 1981 and has been Field Executive for plaintiffs' Syracuse Personal Lines Center

since 1999.  Bowsher' averment that he is fully familiar with the underwriting rules, practices

and guidelines of Royal & SunAlliance is undisputed.  He states:

> The Homeowner Application contains a section entitled General Information. The first
> question in that section asks: "Any business conducted on premises?" The answer to
> that question is checked "No."

> Based upon Royal's underwriting rules and practices in effect in 1998 and today, if the
> Patels had answered the first question "Yes", Royal would not have issued the Tenants
> policy and the Personal Umbrella ("VIP") policy to the Patels.

> According to the Royal Homeowners Policy Program Underwriting Manual, a Tenants
> policy and a Personal Umbrella ("VIP") policy would not be issued to an applicant that
> conducts a business on the premises. Specifically, ... [the manual] allows the issuance
> of ... [the policies issued to the Patels] to a tenant (non-owner) of a dwelling or an
> apartment or the owner-occupant of a dwelling, cooperative unit, or of a building
> containing an apartment provided the residence premises occupied by the insured is

-6-

used exclusively for residential purposes.   [An exception in the manual] states that "certain business occupancies" are permitted, provided that the premises is occupied principally for private residential purposes and "[t]here is no other business occupancy on the premises." [This exception] permits only certain non-public non-commercial, incidental business on a premises.

Based upon these Rules, Royal would not have issued the Tenants policy [or the umbrella policy] that was issued to the Patels had the Patels responded that a motel business was conducted on the premises.
***
This is because the conduct of a business on a particular premises significantly increases the liability exposure beyond that normally presented by the risks associated with issuing a Tenants policy and a Personal Umbrella ("VIP") policy. Thus the premium charged for the normal Tenants policy and the normal Personal Umbrella VIP") policy such as were issued to the Patels does not contemplate the increased liability exposure that is presented by a business conducted on the premises. Consequently, had the Patels informed Royal that a motel business was conducted on the premises, a Tenants policy and a Personal Umbrella ("VIP") policy would not have been issued to them.

(Citations to manual and paragraph numbering omitted.)  The Court concludes that, through the affidavit of Bowsher and the relevant portions of the underwriting manual, which are part of the record, plaintiffs have established as a matter of law that they would not have issued either the homeowners policy or the umbrella policy that was issued to the Patels had the Patels correctly responded that a business was conducted on the premises.

Defendants introduce no evidence to the contrary.  It is irrelevant that the occurrence causing the loss was not related to any use of the premises as a motel; nothing in section 3105 of New York's Insurance Law or in the case law interpreting it supports the proposition that a misrepresentation is material only if it pertains to the particular occurrence causing the loss.  Nor is it relevant that the misrepresentation may have been unintentional.  Rather, the question is whether the same policy would have been issued if the correct information had been disclosed in the application.  As observed by the Second Circuit:

-7-

> Most risks are insurable at some price. The purpose of the materiality inquiry is not to permit the jury to rewrite the terms of the insurance agreement to conform to the newly disclosed facts but to make certain that the risk insured was the risk covered by the policy agreed upon. If a fact is material to the risk, the insurer may avoid liability under a policy if that fact was misrepresented in an application for that policy whether or not the parties might have agreed to some other contractual arrangement had the critical fact been disclosed. ... [A] contrary result would reward the practice of misrepresenting facts critical to the underwriter's task because the unscrupulous (or merely negligent) applicant "would have everything to gain and nothing to lose" from making material misrepresentations in his application for insurance. Such a claimant could rest assured [that] ... in the event of a contested claim, he would be entitled to the coverage that he might have contracted for had the necessary information been accurately disclosed at the outset. New York law does not permit this anomalous result.

*Mutual Benefit*, 848 F.2d at 34. Here, plaintiffs have demonstrated without contradiction that they would not have issued the policies if the correct information had been given, because the misrepresentation was material to the risk. [3]

Defendants contend that plaintiffs waived the issue of material misrepresentation and/or are estopped from raising it, because they did not explicitly raise the misrepresentation in their reservation of rights letter dated July 1, 2003, or the declaratory judgment complaint, and did not raise it until after settling the subrogation actions. It is axiomatic that failure to disclaim timely, without more, does not create coverage where none exists. *See Zappone v. Home Insurance. Co.*, 55 N.Y.2d 131, 138 (1982). There is no showing of any conduct by plaintiffs, such as continuing to accept premiums after learning of the misrepresentation, that would constitute a waiver in the case at bar. *See Belesi v. Connecticut Mut. Life Insurance. Co.*, 707 N.Y.S.2d 663, 664 ( 2d Dep't 2000).

---

[3]

Indeed, the increased liability exposure due to the existence of a business on the premises is illustrated by the high amount of the subrogated claims in this case (over $1.8 million) arising from damage to that very business.

-8-

Moreover, there is no basis here to estop plaintiffs from denying any obligation to indemnify.  Plaintiffs defended Pritiben and P.P. in the St. Paul and Vermont Mutual actions and negotiated a settlement whereby defendants were released from all liability.  Defendants make no claim that by defending those actions before disclaiming any duty to indemnify on the ground of misrepresentation, plaintiffs placed defendants in a worse position than they would have been if plaintiffs had raised this ground earlier.  *Compare, e.g., United States Fidelity and Guar. Co. v. New York Susquehanna and Western Ry. Corp.*, 713 N.Y.S.2d 624, 625-26 (4th Dep't 2000) (finding prejudice from a late disclaimer sufficient to estop the insurer from asserting non-coverage, where the insurer first asserted the disclaimer on the eve of a settlement conference, thus placing in jeopardy a negotiated settlement favorable to its insured and forcing its insured to agree to litigate coverage issues in order to save the settlement).  Defendants have not alleged anything in plaintiff's conduct towards them which would warrant the application of the doctrine of estoppel. [4]

Accordingly, plaintiffs are entitled to summary judgment on the ground that the homeowners and umbrella policies are void *ab initio* due to a material misrepresentation.  Thus, the Court does not address the other issues raised on the motions.

## CONCLUSION

It is therefore

---

[4]

Nor does the record indicate that St. Paul and Vermont Mutual have attempted to rescind the settlement of the subrogation actions or otherwise claimed that plaintiffs acted inequitably towards them.  It is inherent in the terms of the settlement that St. Paul and Vermont Mutual were fully aware at all relevant times of the existence of this declaratory judgment action by plaintiffs seeking a determination that they were not obligated to defend or indemnify defendants.

ORDERED that defendants' motion for summary judgment is denied; and it is further

ORDERED that plaintiffs' motion for summary judgment is granted; and it is further

ORDERED that it is hereby declared in accordance with the Memorandum-Decision and Order herein that the homeowners and umbrella policies do not obligate plaintiffs to indemnify defendants in connection with the subrogation actions by St. Paul Insurance Company and Vermont Mutual Insurance Company.

IT IS SO ORDERED.

October_13, 2005
Syracuse, New York

Norman A. Mordue
U.S. District Judge